Mr. Justice Cox
delivered the opinion of the Court:
This was an action commenced in November, 1884, upon a promissory note dated in June, 1879, payable one year after date; so that the action was brought a little over four years after the maturity of the debt. The general issue was pleaded and also the Statute of Uimitations, and the plaintiff replied to the plea of the statute, “beyond seas;” that is, that when the cause accrued the said plaintiff was in parts beyond seas, to wit: in the State of Ohio, and did not, from the time when the cause of action accrued, at any time before the institution of this suit come or return to the District of Columbia.
*172 This was demurred to. The demurrer was overruled and judgment given for. the plaintiff and an appeal taken to this court.
The case presents the broad question, whether Section 466 of the Revised Statutes of the District of Columbia applies to any other than the action of ejectment. That section is:
“Sec. 466. All exceptions in favor of parties beyond the District, which may, by laws in force March 3, 1865, be replied or relied on in any action or proceeding brought in the District, are repealed and abrogated.”
This section was originally section 2 of an act of March 3, 1865, entitled “An act to quiet titles in favor of parties in actual possession of lands situated in the District of Columbia.” Now, if we will consider this section by itself as if it were one entire act, there will be little room for doubt as to its meaning. The application of it may be stated in syllogistic form as follows: “That all exceptions in favor of parties beyond the District of Columbia which, by existing laws, may be replied or relied on in any action or proceeding brought in said District are hereby repealed and abrogated. But, in an action of assumpsit, an exception in1 favor of parties beyond the District may, by existing laws be relied on, in reply to the defense of limitations; therefore, in such action, the exception is repealed.” The same thing will apply to other actions. There would be no room for doubt on this question. Therefore, there could be no occasion to call in the usual aids relied on in the interpretation of doubtful phraseology, such as the title of the act, etc.
But Section 466, Revised Statutes, D. C. was originally Section 2, of the Act of March 3, 1865, aforesaid.
And it is argued that since the title of the act refers only to real estate, the terms “in any action or proceeding” should be restricted to such action or proceeding as may disturb the title to real estate, which can only be the action of ejectment.
Perhaps the best answer to this is found in the language of *173 the Supreme Court in the case of Hadden vs. The Collector, 5 Wall., 107, in which Justice Field says:
‘ ‘ The title of an act furnishes little aid in the construction of its provisions. Originally in the English Courts the title was held to be no part of the act. “ No more,” says Eord Holt, “than the title of the book is part of the book.” Mills vs. Wilkins, 6 Mod., 62. It was generally framed by the clerk of the House of Parliament, where the act originated, and was intended -only as a means of convenient reference. At the present day the title constitutes a part of the act, but it is still considered as only a formal part; it cannot be used to extend or to restrain any positive provisions contained in the body of the act. It is only when the meaning of these is doubtful that resort may be had to the title, and even then it has little weight. It is seldom the subject of special consideration by the legislature.
‘ ‘ These observations apply with special force to Acts of Congress. Every one who has had occasion to examine them has found the most incongruous provisions, having no reference to the matter specified in the title. Thus, the law regulating appeals in Mexican lands cases to the District Courts of the United States from the Board of Commissioners, created under the A.ct ■ of, March 3, 1851, is found in an act entitled “An act making appropriations for the civil and diplomatic expenses of the Government for the year ending June 30, 1853, and for other purposes.” Act, June 30, 1853, Ch. 108 (10 Stat., 98). The law declaring that in the Courts of the United States’there shall be no exclusion of any witness on account of color, nor in civil actions when he is a party to or interested in the issue tried, is contained in a proviso to a section in the appropriation act of 1864, the section itself directing an appropriation for detecting and punishing the counterfeiting of the securities and coin of the United States. Act, July 2, 1864, Ch. 210 (13 Stat., 351).
“During the past session, whilst a bill was pending before Congress, entitled ‘a bill granting the right of way to ditch *174 and canal owners over the public lands, and for other purposes,’ all after the enacting clause was stricken out, and provisions establishing a complete system for the possession and sale of interests in mines were substituted in its place. And thus the most important act in our legislation relating to the mining interests of the country stands on the statute book under a title purporting that the act grants a right of way to ditch and canal owners over the public lands, and for other purposes. Act, July 6, 1866, Ch. 262 (14 Stat., 251). The words ‘for other-purposes’ frequently added to the title in Acts of Congress, are considered as covering every possible subject of legislation.”
Nor does the argument from the context of this act furnish any more light upon this question It is true that section first and section third relate simply to defects in conveyances of land which have been of record, and under which parties have held peaceable possession.
Now, it may be perfectly true, that, in order to further quiet titles to land, Congress did intend to abolish distinctions between residents and non-residents, and prescribe uniform limits of time within which actions of ejectment should be brought, affecting 'titles to land; and yet, at the same time, they may have thought that inasmuch as there was no reason for any discrimination between actions, in this respect, they would provide for all classes of actions. If they intended to limit the provision to the action of ejectment, it is not easy to understand why the action of ejectment was not, -in terms, referred to. It was very easy, and in that case, natural, to say that all exceptions which may be replied or relied on in any action of ejectment are abolished; but they use the language “in any action or proceeding,” which implies that there may be more than one kind of action, in which this exception may be relied on, and it is not possible to give effect to the, language without applying it to other actions.
As I said before, it is not necessary to resort to the title or context to ascertain the meaning, unless the meaning itself *175 is ambiguous, which is not the case in the present instance.
But it is said that this section is repeated in 466 of the revision under the same title as in the original act, that is, “Quieting Band Titles.”
There is a complete answer .to that in the fact that Sec. 1296 of our Revised Statutes, D. C., declares : “And this revision of the acts ot Congress relating to the District of Columbia shall be subject to and governed by the provisions of chapter 74 of the Revised Statutes of the United States, entitled, “ Repeal provisions,” and in that chapter we find this provision, viz :
“Sec. 5600. The arrangement and classification of the several sections of the revision have been made for the purpose of a more convenient and orderly arrangement of the-same, and therefore no inference or presumption of a legislative construction is to be drawn by reason of the title under which any particular section is placed.”
The location, therefore, of this section throws no light at all upon the meaning.
Then again, we are referred to a late Act of Congress, in which this provision, Section 466, is re-enacted, as if it were not already in force. That is the act of Congress of Feb. 28, 1887. That consists of only two sections. The first confers power upon persons to whom letters testamentary or of administration have been granted by proper authority in any of the United States, or Territories thereof, to maintain an action in the District of Columbia. Then the second section is a re-enactment of this section 466, R. S. D. C."
It may be that this implies a doubt whether that section (466) was in force or had the extended application that we have given it. It is not perfectly clear why Congress re-enacted this law. They may have had donbts on the subject. Or it may be that in giving the right of action to a new class of people who did not have it already, they apprehended that if the statute stopped there, it might give rise to the impression that such right of action was not to be subject to any limitation as to time, and the second section was enacted as a *176 limitation or qualification of the right conferred by the first.
If it be argued that this is an implied declaration as to the meaning of the existing law, it suffices to say, that such declaration would be totally inoperative.
Congress may declare that for the future the existing law shall bear such and such an interpretation ; but it cannot declare what the law meant when it was passed ; that would be the assumption of judicial power. It is for the courts only to interpret existing statutes.
The only knowledge that we have of any action of this court upon this same question we get from notes of Mackey’s Practice, page 23, where it appears that heretofore, in the case of Weeks’ Administratix vs. Godey, is raised this same question in an action on a promissory note. The replication “beyond seas” was demurred to, the demurrer sustained, and on appeal to the General Term the judgment was sustained.
I have always supposed it to be the settled opinion of the bench and bar that the right to reply 1 ‘ beyond seas’ ’ is abrogated entirely in all actions.
We think this demurrer ought to have been sustained, and the judgment below is consequently reversed..